*786 ATTORNEY DISCIPLINARY PROCEEDINGS
CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Paul E. Graugnard, an attorney licensed to practice law in Louisiana.
FORMAL CHARGES
The ODC filed two sets of formal charges against respondent. The first, consisting of one count and bearing the disciplinary board’s docket number 99-DB-112, was filed on October 29, 1999. The second set of formal charges, bearing the disciplinary board’s docket number 00-DB-113, was filed on September 8, 2000 and encompasses three counts of misconduct. The two sets of charges were consolidated by order of the hearing committee chair dated October 26, 2000.

99-DB-112

The Hatten Matter

In August 1997, respondent received a $9,000.00 personal injury settlement on behalf of his clients, Robert Hatten and Mary Ann Loup. Respondent endorsed his clients’ names on the settlement check and deposited it into his client trust account. Thereafter, respondent withdrew the funds and placed them into a personal account. Respondent failed to remit to Mr. Hatten his portion of the settlement, amounting to | ¡>$5,000.00, despite receiving numerous inquiries from Mr. Hatten concerning the funds. On December 18, 1998, respondent gave sworn testimony to the ODC in which he claimed that he had disbursed the settlement funds to Mr. Hatten by check drawn on a Minden, Louisiana bank. However, no such distribution had ever been made, and Mr. Hatten has not received his settlement funds.
The ODC alleged that respondent’s conduct violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.15(a)(b)(d) (safekeeping property of clients or third persons), 8.1(a) (knowingly making a false statement of material fact in connection with a disciplinary matter), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(c) (engaging in conduct involving dishonesty, *787 fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

00-DB-113

Count I — The Larsen Matter
In June 1996, respondent received a $40,000.00 personal injury settlement on behalf of his client, Wayne Villar. Respondent had previously received written notice of a statutory hen for medical services provided to Mr. Villar by Larsen Physical Therapy, Inc. (“Larsen”), but he failed to pay the sums owed to Larsen, totaling $4,171.00. Instead, respondent purportedly deposited the settlement funds into his client trust account. Upon learning that Mr. Villar’s case had settled, Larsen filed suit and in March 1997, obtained a court order enjoining respondent from disbursing the settlement funds.
On June 4, 1998, a judgment was rendered against Mr. Villar in the amount of $4,171.00, plus judicial interest thereon from August 1, 1992 until paid. Mr. Villar was |aalso assessed with the costs of the proceeding and attorney’s fees in the amount of $1,750.00. Respondent nevertheless continued to refuse payment to Larsen, and he filed a meritless appeal of the trial court’s judgment, which he later abandoned.
In April 1999, in an effort to collect its judgment, Larsen propounded garnishment interrogatories to respondent. When respondent refused to answer, a judgment was rendered against him personally. Still, respondent refused to pay Larsen, and in January 2000, Larsen’s counsel filed a complaint against him with the ODC. Respondent subsequently admitted to the ODC in sworn testimony given in connection with another disciplinary matter that he has closed his client trust account and is “not holding any money for anyone.”
Finally, the ODC alleged that respondent failed to cooperate in the investigation of the complaint filed against him by Larsen’s counsel.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons), 3.1 (meritorious claims and contentions), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(c), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation).
Count II — The Thompson Matter
In early April 1997, Edward Thompson retained respondent to represent him in a personal injury matter stemming from an April 5, 1996 automobile accident. Respondent timely filed suit to interrupt prescription, but thereafter, he did nothing further in connection with the matter. As a result, Mr. Thompson’s personal injury claim was lost under the provisions of the Louisiana Code of Civil Procedure relating to abandonment. Nevertheless, respondent failed to communicate this fact to Mr. |/Thompson, and he concealed his failure to act from his client. The ODC also alleged that respondent failed to cooperate in the investigation of the complaint filed against him by Mr. Thompson.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.1(c), 8.4(c), and 8.4(g).
Count III — The Coleman Matter
In March 1999, Garland Coleman paid respondent $500 to obtain an uncontested divorce on his behalf. Respondent accepted the fee but then abandoned his law practice without notifying his client of his whereabouts. Respondent did not commu *788 nicate with Mr. Coleman concerning the divorce and failed to refund the unearned portion of the fee he was paid. The ODC also alleged that respondent failed to cooperate in the investigation of the complaint filed against him by Mr. Coleman.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.5 (fee arrangements), 1.15, 8.1(c), and 8.4(g).
DISCIPLINARY PROCEEDINGS
After some delay in obtaining respondent’s answer to the formal charges, respondent and the ODC entered into a stipulation of facts. The matter then proceeded to a hearing in mitigation, which was conducted by the hearing committee on November 28, 2001.
|r,At the hearing, respondent admitted that the substance of the formal charges is correct and that he owes (and could make) restitution to his clients in each of the charges. The hearing committee chair agreed to leave the record open for 45 days to allow respondent time to make restitution and to file into the record evidence to that effect; however, respondent filed nothing for the committee’s consideration.

Hearing Committee Recommendation

After reviewing the evidence presented at the hearing, the hearing committee made the following factual findings and legal conclusions:
In 99-DB-112, the Hatten matter, the committee found that respondent converted Mr. Hatten’s funds to his own use, in violation of Rule 1.15, and that he lied to the ODC when he claimed he had disbursed funds to Mr. Hatten. This conduct violated Rules 8.1(a), 8.4(c), and 8.4(d). The committee found there is no clear and convincing evidence that respondent violated Rule 8.1(c).
In Count I of 00-DB-113, the Larsen matter, the committee found that the sums owed by respondent to Larsen remain unpaid. By failing to pay Larsen, by failing to keep the funds in a client trust account, and by his subsequent use and conversion of the funds, the committee concluded that respondent violated Rule 1.15. Furthermore, respondent’s personal use of the funds upon which Larsen maintained its lien and the closure of his client trust account violated the injunction entered by the district court, and therefore constitutes conduct involving dishonesty, fraud, or misrepresentation, in violation of Rule 8.4(c). The committee found there is no clear and convincing evidence that respondent violated Rules 8.1(c), 8.4(d), or 8.4(g).[1]
Ifiln Count II of 00-DB-113, the Thompson matter, the committee found that respondent has taken no action in Mr. Thompson’s case other than to file the petition in April 1997. Although no formal order of abandonment has been entered in the matter, the time delays for abandonment set forth in La.Code Civ. P. art. 561 have run. Respondent has had no communication with Mr. Thompson and has provided him with no information concerning the status of the case or the objectives of the representation, including the probability that the action has been abandoned. The committee concluded that by his conduct in this matter, respondent violated Rules 1.3 and 1.4. The committee found there is no clear and convincing evidence that respondent violated Rules 8.1(c), 8.4(c), or 8.4(g).
*789 Finally, in Count III of 00-DB-113, the Coleman matter, the committee found that respondent prepared the pleadings for Mr. Coleman’s divorce, but never had Mr. Coleman come into the office to sign them. Respondent did not file the divorce, nor did he refund the $500 fee he received from Mr. Coleman. Respondent acknowledged at the hearing that Mr. Coleman’s retainer fee should be refunded. The committee concluded that by his conduct in this matter, respondent violated Rules 1.3, 1.4, 1.5(f)(6), and 1.15. The committee found there is no clear and convincing evidence that respondent violated Rules 8.1(c) or 8.4(g).
The committee then turned to a discussion of the appropriate sanction for respondent’s misconduct. Under Standard 4.11 of the ABA’s Standards for Imposing Lawyer Sanctions, disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. In his representation of Mr. Villar, Mr. Coleman, and Mr. Hatten, respondent received funds belonging to his clients or third parties that he knowingly converted to his own use, causing actual injury to his clients, and in the case of Mr. Villar, to a third-party 17medical provider. Restitution has never been provided in these cases. Under Standard 4.42, suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client. With respect to Mr. Thompson, respondent has failed to take any action in the case for years, allowing the time period for abandonment of the case to pass. Such conduct constitutes a neglect which causes potential injury to Mr. Thompson. Finally, Standard 7.1 provides that disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system. Respondent lied to the ODC while under oath, testifying that he had disbursed trust funds to Mr. Hatten, when in fact, he had not. This lack of respect for the standards of the profession clearly causes serious injury to his clients, the public, and the legal system.
In mitigation, the committee recognized that respondent has no prior disciplinary record. However, the committee found the following aggravating factors are applicable: dishonest or selfish motive; pattern of misconduct; multiple offenses; submission of a false statement during the disciplinary process; and indifference to making restitution.
Based on these facts, the committee recommended that respondent be disbarred and ordered to make full restitution to the victims of his conversion.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
| ^Disciplinary Board Recommendation
The disciplinary board found the hearing committee’s findings of fact are not manifestly erroneous, and that its application of the Rules of Professional Conduct was proper. The board concluded that respondent violated duties owed to his clients, to the public, and to the profession. The board further determined that respondent’s conduct was knowing, if not intentional, and caused actual harm. Mr. Hat-ten and Larsen Physical Therapy have never been paid. Respondent’s actions also resulted in a judgment being rendered against Mr. Villar in favor of Larsen. Mr. Thompson may have lost his lawsuit due to respondent’s neglect, and Mr. Coleman paid a legal fee for services that he will *790 never receive. The baseline sanction for this conduct is disbarment.
The board concurred in the aggravating and mitigating factors cited by the committee. In light of these considerations, the ABA’s Standards for Imposing Lawyer Sanctions, and the prior jurisprudence, the board concluded that disbarment is the appropriate sanction. The board also recommended respondent be ordered to make restitution to his clients and to Larsen Physical Therapy.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the detailed factual findings of the hearing committee. Respondent has converted and otherwise mishandled client and third-party funds, neglected client matters and failed to communicate with clients, failed to refund unearned fees, and engaged in conduct that is dishonest and is prejudicial to the administration of justice.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s actions are clearly serious in nature. His neglect of his clients’ legal matters and failure to communicate with them resulted in undue delays and the loss of property interests. Most disturbing, however, is respondent’s conversion of client funds. In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we set forth the elements which make disbarment appropriate in a conversion case:
In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. [citations omitted]
These elements are readily identifiable in the instant case. The magnitude of the *791 deprivation of funds, and resulting inconvenience to respondent’s clients and third parties, has been great. One of respondent’s clients, Mr. Hatten, has been waiting for his settlement funds since August 1997, and a health care provider, Larsen Physical Therapy, has been waiting since June 1996 for respondent to pay Mr. Vil-lar’s medical expenses. Respondent has made no restitution to his victims, even after he assured the hearing committee in 2001 that he would do so promptly. When confronted with evidence against him, respondent lied under oath. Under these circumstances, we can reach no other conclusion than that respondent has acted in bad faith and intended a result inconsistent with his clients’ interests.
Accordingly, the baseline sanction for respondent’s misconduct is disbarment. Several aggravating factors are present, including respondent’s dishonest or selfish motive, pattern of misconduct, multiple offenses, submission of false statements during the disciplinary process, and indifference to making restitution. The sole mitigating factor, absence of a prior disciplinary record, is insufficient to justify a deviation from the sanction of disbarment.
Finding disbarment is appropriate, we will accept the disciplinary board’s recommendation of discipline.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Paul Eugene Graugnard, Louisiana Bar Roll number 20204, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. It is further ordered that respondent shall pay restitution to Robert Hatten in the amount of $5,000.00 plus legal interest, and to Garland Coleman in the amount of $500.00 plus legal interest. Finally, it is ordered that respondent shall satisfy the judgment rendered in favor of Larsen Physical Therapy, Inc. in suit number 95,-350 on the docket of the 26th Judicial District Court for the Parish of Bossier, State of Louisiana. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Though the ODC did not raise the issue in this court, we observe that neither the hearing committee nor the disciplinary board made a finding as to the Rule 3.1 violation alleged in the formal charges in connection with the Larsen matter.