894 So.2d 315 (2005)
In re J. Michael BORDELON.
No. 2004-B-0759.
Supreme Court of Louisiana.
January 7, 2005.

*316 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, J. Michael Bordelon, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
In 1987, Denise Seidman was injured while evacuating an airplane using its emergency slide. Ms. Seidman retained counsel to file suit against the airline in federal court. The case proceeded to trial and the jury rendered a substantial verdict in Ms. Seidman's favor. The district court subsequently denied a motion for new trial filed by the airline on the condition that Ms. Seidman accept a remittitur. Ms. Seidman accepted the remittitur and judgment was entered in accordance therewith. On February 15, 1991, the United States Court of Appeals for the Fifth Circuit remanded the case for a new trial on the issue of damages if Ms. Seidman was unwilling to accept a further reduction of the award.[1]
Following the appellate court's decision, Ms. Seidman had difficulty contacting her attorney to discuss her case. As a result, in late August of 1991, she consulted with respondent, to whom she was referred by a mutual friend. Over the next three months, respondent met with Ms. Seidman on several occasions to discuss the personal injury case. He investigated the current posture of the case, spoke to Ms. Seidman's attorney, and attempted to enlist other attorneys to re-try the case. Eventually, however, Ms. Seidman's original attorney contacted her, and in November 1991, Ms. Seidman authorized the settlement of the case for $650,000. In mid-December 1991, Ms. Seidman received $250,000 as the net proceeds of her personal injury settlement.
At about the same time that Ms. Seidman received the settlement, she and respondent began a consensual sexual relationship, which continued through the fall of 1992. During the relationship, respondent suggested to Ms. Seidman that she could "invest" some of her settlement by loaning him $20,000 for the down payment on a home he and his wife wanted to purchase. Ms. Seidman agreed to do so, and on January 15, 1992, respondent executed an unsecured promissory note in her favor.[2] Between 1992 and 1994, respondent *317 made periodic interest payments on the promissory note. He also reduced the principal balance of the note to $14,132 as of October 1994.
On October 20, 1994, Ms. Seidman was arrested in New Orleans on drug-related charges. She immediately contacted respondent, who obtained her release from jail on a bond secured by the home that he shared with his wife. Ms. Seidman then moved into respondent's home for a period of several months. During this time, respondent demanded that Ms. Seidman return the original $20,000 promissory note to him. When Ms. Seidman was unable to locate the note, respondent prepared an affidavit for her signature attesting that the original promissory note had been lost. The November 20, 1994 affidavit also stated that the $20,000 loan had been "paid in full and completely discharged by the makers, and fully satisfied." Ms. Seidman denied that she was told of this provision at the time she signed the affidavit, which she alleged was signed under duress, and she denied that the loan had been fully satisfied by respondent.
Ms. Seidman left respondent's home in January 1995. By letter to respondent dated February 1, 1995, Ms. Seidman requested full repayment of the balance of the principal, some $14,200, and accrued interest. Respondent refused Ms. Seidman's demand, stating that the note "has been paid." In November 1995, Ms. Seidman filed a complaint against respondent with the ODC, alleging, among other things, that respondent had refused to repay the loan and that he had coerced her to sign the lost note affidavit. Respondent denied Ms. Seidman's allegations and asserted that the debt had been "extinguished in full, per her Notarized receipt."
In 1996, the ODC dismissed the complaint, finding no evidence which proves that an attorney/client relationship was created prior to the execution of the promissory note. The ODC also found no evidence to suggest that Ms. Seidman signed the lost note affidavit under coercion or duress or that the debt had not been paid in full. Upon Ms. Seidman's request for review of the dismissal, the disciplinary board remanded the matter to the ODC for further investigation. In particular, the board directed the ODC to determine whether an attorney/client relationship existed between respondent and Ms. Seidman, and to reconsider the issue of whether respondent fully repaid the promissory note.
In response to the board's order of remand, respondent denied that he had ever represented Ms. Seidman in a legal capacity. With respect to the loan, respondent stated that he paid off Ms. Seidman "in cash," and that "the loan was repaid IN FULL." In a sworn statement taken in March 1998, respondent stated affirmatively that the loan "was completely paid off by mid '94."

DISCIPLINARY PROCEEDINGS

Formal Charges
Following additional investigative efforts after remand, the ODC filed two counts of formal charges against respondent on July 29, 1998. In Count I, the ODC alleged that respondent breached his duty of loyalty to his client, in violation of Rule 1.7(b) of the Rules of Professional Conduct (a lawyer shall not represent a client if the representation may be materially limited by the lawyer's own interests), and engaged in a prohibited business transaction with a client, in violation of Rule 1.8(a). In Count II, the ODC alleged that respondent provided false and misleading information in the course of the disciplinary investigation, in violation of Rules 8.1(a) (knowingly making a false statement of material fact *318 in connection with a disciplinary matter), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Specifically, the ODC alleged that respondent falsely denied his sexual relationship with Ms. Seidman, falsely denied any indebtedness owed to her, and "otherwise provid[ed] false testimony designed to mislead the Office of Disciplinary Counsel."
On September 21, 1998, respondent answered the formal charges, denying that he ever had an attorney/client relationship with Ms. Seidman. Respondent refused to admit or deny that he had a sexual affair with Ms. Seidman, on the ground that issue was "immaterial, as there was never an attorney-client relationship." Respondent admitted that he borrowed money from Ms. Seidman, but stated that the terms "were of an arms length nature," and that in the absence of an attorney/client relationship, there was no need for him to have advised Ms. Seidman to seek other counsel or to waive a conflict in connection with the transaction. Concerning the repayment of the loan, respondent asserted "that the note was paid, remitted, and discharged." Finally, respondent denied that he provided false or misleading information to the ODC during the disciplinary process.

First Formal Hearing
The matter proceeded to a formal hearing on the merits on November 8, 1999. Neither respondent nor his counsel of record appeared on that day, although the record reflected that the disciplinary board administrator had provided respondent's counsel with notice of the hearing. The hearing committee chair also attempted to contact respondent's counsel by telephone, but was unable to reach him. The hearing committee then proceeded with the hearing.
In support of the formal charges, the ODC presented documentary evidence and the testimony of several witnesses, including Ms. Seidman, who denied that she had ever remitted any portion of respondent's debt represented by the promissory note and asserted that the note remained unpaid.
Respondent subsequently learned that the hearing had taken place in his absence, and he asked for an opportunity to present testimony in his defense. The ODC did not oppose respondent's request. Accordingly, the hearing committee chair ordered that a new hearing be conducted.

Consent Discipline
Prior to the second hearing, respondent submitted a petition for consent discipline which, among other provisions, called for him to repay Ms. Seidman the sum of $14,200. The ODC concurred in the petition, and the disciplinary board recommended that the proposed discipline be accepted. This court ultimately rejected the petition for consent discipline and remanded the matter for further proceedings before the hearing committee. In re: Bordelon, 01-1202 (La.5/23/01), 788 So.2d 423.

Second Formal Hearing
The second hearing on the merits was scheduled for April 11, 2002. Respondent appeared at that time, along with his counsel. Respondent testified on his own behalf and called his wife, attorney Kathryn Hill, to testify before the committee. Though the ODC had secured Ms. Seidman's presence at the second hearing, in order that she would be available to be cross-examined by respondent, respondent chose not to call her to testify.
In his testimony concerning the debt owed to Ms. Seidman, respondent admitted *319 that "the written evidence" reflected that as of October 1994, the principal balance on the note was $14,132. Nevertheless, respondent asserted that the actual balance due Ms. Seidman at that time was "somewhere in the neighborhood of ten to $12,000." Respondent conceded that he had no receipts or other documentation to establish that he had repaid the principal balance down to that amount, but he testified that regardless of that fact, Ms. Seidman told him both before and after he bailed her out of jail that the balance due on the note would be forgiven:
A. . . . [S]he said you don't have to pay me, you don't have to pay me at all, I said, well, Denise, thank you very much, but I need you to get the note and mark it paid or cancelled and return it to me and my wife.
Q. What was the reason for her willingness to forgive the debt?
A. I don't know. I expect because of friendship and our past relationship, but she did it unilaterally. She said, you don't have to pay me back, forget about it completely.

Hearing Committee Recommendation
Considering the evidence presented at the formal hearings, the hearing committee made a factual finding that no attorney/client relationship ever existed between respondent and Ms. Seidman. The committee found that respondent only agreed to assist Ms. Seidman in her efforts to find a new attorney to re-try her personal injury case. Respondent contacted an attorney and performed a minimal investigation into the matter by obtaining a copy of the district court's ruling. There was no discussion of and no agreement to a fee arrangement between respondent and Ms. Seidman. As it turned out, respondent did not actually refer Ms. Seidman to another attorney because she decided to allow her existing attorney to settle the personal injury case. Under these facts, the committee concluded that Ms. Seidman did not have a reasonable belief that respondent was in fact her attorney on the personal injury case. Accordingly, the committee recommended that the charges forming the basis of Count I, which are predicated on the existence of an attorney/client relationship between respondent and Ms. Seidman, be dismissed.
With respect to Count II, concerning respondent's conduct during the disciplinary investigation, the committee found there is no clear and convincing evidence that respondent provided false or misleading information to the ODC concerning his relationship with Ms. Seidman. Respondent was not asked to characterize the relationship until the April 2002 hearing, at which time he neither admitted nor denied a sexual relationship. However, the committee found that respondent did make false statements of material fact concerning payment of the promissory note to Ms. Seidman. The committee noted that at various times in these proceedings, respondent has claimed that the debt to Ms. Seidman was paid in full, but on yet other occasions he claimed that a portion of the debt was forgiven by Ms. Seidman. The committee found these statements are inconsistent and irreconcilable and were obviously intended to convey to the ODC that respondent had fully repaid the entire debt to Ms. Seidman, when that was not in fact the case. Based on these factual findings, the committee found that respondent violated Rule 8.1(a) of the Rules of Professional Conduct.
Turning to the issue of an appropriate sanction for respondent's misrepresentations to the ODC, the committee recognized that respondent has no prior disciplinary record in his 24-year legal career. *320 Accordingly, the committee recommended that he be suspended from the practice of law for sixty days.
Both respondent and the ODC filed objections to the hearing committee's report and recommendation.

Disciplinary Board Recommendation
After reviewing the record of this matter, the disciplinary board agreed with the hearing committee that the ODC failed to prove by clear and convincing evidence the existence of an attorney/client relationship between respondent and Ms. Seidman. The board noted that respondent has consistently maintained that he met with Ms. Seidman only to help her find another attorney to handle her personal injury case. The board adopted the hearing committee's factual findings and made additional factual findings relating to respondent's conduct. Based on these factual findings, the board concluded that respondent violated the Rules of Professional Conduct as follows:
Rules 1.7 and 1.8  The board found these rules have not been violated, as they require the existence of an attorney/client relationship, which has not been established in this matter.
Rules 8.4(a) and 8.4(c)  The board found these rules were violated by respondent's preparation of a false lost note affidavit and his coercion of Ms. Seidman into signing the affidavit without the benefit of independent counsel. The board found respondent badgered Ms. Seidman into signing the affidavit for the purpose of claiming the promissory note was paid in full, when in fact, it had not been fully paid nor had Ms. Seidman forgiven the debt. The board also found that respondent violated Rules 8.4(a) and 8.4(c) by his irreconcilable statements concerning the payment of the note. In a 1998 sworn statement, respondent insisted that the debt was extinguished by mid-1994. During the hearing in 2002, respondent asserted that the note had been forgiven or that he received a two-for-one credit when he made payments. The board concluded that respondent's irreconcilable and inconsistent statements regarding the status of his debt to Ms. Seidman were deceitful, dishonest, and fraudulent.
Similarly, as to Count II, the board found that respondent violated Rules 8.1(a) and 8.4(a) when he knowingly made false statements of material fact during a disciplinary investigation. Respondent maintained throughout the ODC's investigation and during the proceedings before the hearing committee that he had either paid off the debt to Ms. Seidman in cash, that Ms. Seidman gave him a two-for-one credit on paying off the loan, or that she forgave him the $14,200 balance of the loan. Respondent presented no credible evidence for the disparity in these various explanations.
The board found that by his conduct, respondent intentionally violated duties owed to the public and as a professional. More than seven years passed before respondent finally paid Ms. Seidman the $14,200 balance on the note. The ODC expended time and resources in establishing that respondent had not paid the promissory note and that Ms. Seidman had not forgiven the debt.
Standard 5.11(b) of the ABA's Standards for Imposing Lawyer Sanctions suggests that disbarment is appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. Standard 5.12 provides for suspension when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's *321 fitness to practice. Respondent intentionally prepared the lost note affidavit with language misrepresenting that the debt was paid in full. As a longtime practicing attorney who was gaining a substantial benefit by his actions, respondent knew or should have known to advise Ms. Seidman to seek independent counsel before he went forward with the lost note affidavit.
Standard 7.1 suggests that disbarment is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system. By contrast, Standard 7.2 suggests suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system. The board found that in this case, respondent intentionally concealed the status of the promissory note during the disciplinary process. Respondent's testimony vacillated between full payment of the note and forgiveness of the balance. From January 1992 until May 1994, or perhaps as late as August 1994, respondent made infrequent payments of interest and some principal and documented same with handwritten notes. Respondent's testimony that he paid off Ms. Seidman in cash, without a receipt or handwritten note, is incredible. The board concluded the appropriate baseline sanction for respondent's misconduct is a suspension from the practice of law.
In mitigation, the board acknowledged that respondent has no prior disciplinary record. As aggravating factors, the board recognized respondent's dishonest or selfish motive, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1978).
The board noted that the prior jurisprudence dealing with deceitful conduct suggests that an appropriate sanction ranges from disbarment to a suspension of eighteen months to two years, perhaps with some portion deferred. Considering the severity of respondent's intentional misconduct regarding the affidavit and his deceitful conduct during the disciplinary proceedings, the board recommended that respondent be suspended from the practice of law for three years. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
One board member dissented and assigned lengthy written reasons in which he concluded that respondent is guilty of nothing more than giving information to the ODC during its investigation that was inconsistent with his later sworn testimony; for this misconduct, the dissenting member recommended a short suspension of sixty to ninety days.
Neither respondent nor the ODC filed a timely objection in this court to the recommendation of the disciplinary board. However, in response to a motion filed by respondent, we permitted the filing of briefs in the matter. Both respondent and the ODC filed briefs in response to the court's order.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana *322 State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). Nonetheless, in cases involving credibility evaluations, we generally defer to the factual findings of the hearing committee members who act as the eyes and ears of this court. In re: Bolton, 02-0257 (La.6/21/02), 820 So.2d 548.
The record supports the finding made by the hearing committee and the disciplinary board that no attorney/client relationship existed between respondent and Ms. Seidman. While it is true as a general principle that the existence of an attorney/client relationship "turns largely on the client's subjective belief that it exists," see Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567 (La.1986), we conclude that in this case, Ms. Seidman could not have reasonably formed a subjective belief that respondent was acting as her attorney. Ms. Seidman consulted with respondent concerning a personal injury suit that had been tried in federal court, and after an appeal, remanded for a new trial on damages only if Ms. Seidman would not accept a reduction of the award. Respondent told Ms. Seidman that he was not capable of handling the matter and that he would assist her in finding a lawyer to re-try the case. While respondent was in the process of doing this, Ms. Seidman accepted a settlement of the case through her original attorney, without respondent's input. Clearly, no attorney/client relationship existed under these facts. Moreover, as a practical matter we find it is telling that Ms. Seidman mentioned nothing about an attorney/client relationship in her original complaint to the ODC; she characterized her relationship with respondent as that of "a friend." Ms. Seidman did not begin to claim that she thought respondent was her attorney until after the ODC dismissed the complaint, citing the absence of an attorney/client relationship as the basis of its determination that no professional misconduct occurred. Based on this factual finding, we agree that Count I of the formal charges must be dismissed, as the rule violations alleged in that count are predicated upon the existence of an attorney/client relationship.
The hearing committee and disciplinary board also found that respondent's several and varying responses to the ODC concerning payment of the note to Ms. Seidman were irreconcilable with his sworn testimony at the hearing. We agree that this finding is supported by the record. At the outset of these proceedings, respondent steadfastly maintained that he fully paid and completely retired the $20,000 promissory note to Ms. Seidman. Later, in his sworn statement, respondent claimed to have extinguished the debt but admitted that he had no receipts to reflect it. Respondent indicated that he paid Ms. Seidman by personal check, or in cash, or by endorsing to her checks that he received for doing title work.[3] Respondent also indicated that there came a point in time when Ms. Seidman agreed to give him a two-for-one credit against the note in order to receive cash. Respondent suggested that he took advantage of Ms. Seidman's willingness to remit the debt based upon her need for cash and that the debt was extinguished by mid-1994. Finally, at the formal hearing, respondent conceded that he owed Ms. Seidman more than $10,000 when she was arrested in October 1994, but that she forgave the balance of the loan out of gratitude. Respondent has offered no credible explanation that would fairly reconcile these various claims. We find respondent knowingly made false statements of material fact in connection *323 with a disciplinary matter, in violation of Rules 8.1(a) and 8.4(a) of the Rules of Professional Conduct.[4]
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981).
To our knowledge, we have never been confronted with a disciplinary matter in which a Rule 8.1(a) violation is the only misconduct the lawyer committed. Rather, in the cases that have come before us in the past, the lawyer's Rule 8.1(a) violation has been coupled with other, usually serious, misconduct. See, e.g., In re: Black, 04-1195 (La.10/1/04), 883 So.2d 956; In re: Graugnard, 03-2899 (La.3/26/04), 869 So.2d 785. Therefore, in determining the appropriate sanction for respondent's misconduct, we turn to the ABA's Standards for Imposing Lawyer Sanctions. Reference to Standard 7.2 suggests that the applicable baseline sanction in this case is a suspension from the practice of law.
In aggravation, we recognize respondent has substantial experience in the practice of law. However, we note that respondent has a spotless disciplinary record since his admission to the bar in 1978. Under these circumstances, we conclude the appropriate sanction for respondent's misconduct is a suspension from the practice of law for a period of sixty days, as recommended by the hearing committee.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that J. Michael Bordelon, Louisiana Bar Roll number 3246, be suspended from the practice of law in Louisiana for a period of sixty days. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
JOHNSON, J., dissents and assigns reasons.
VICTORY, J., dissents and assigns reasons.
JOHNSON, J., dissents and assigns reason:
In the fall of 1991, the complainant, Denise Seidman consulted with Attorney J. Michael Bordelon with reference to a personal injury suit and appropriate investment avenues for her personal injury award. By December, 1991 Michael Bordelon was engaged in a sexual affair with Ms. Seidman.
In January, 1992, Michael Bordelon persuaded Ms. Seidman to lend him and his spouse, Kathryn Hill, also an attorney, Twenty Thousand ($20,000.00) dollars to use as down payment on the purchase of a *324 home. In return, respondent prepared and executed an unsecured promissory note in favor of Ms. Seidman.
Respondent made several false and irreconcilable statements concerning payment of this note. At the formal hearing on April 11, 2002, respondent testified that he bailed Ms. Seidman out of jail in October, 1994 and that she lived in his home for a period of time. Interestingly, respondent posted a property bond secured by his home and paid a small cash bond as well. Ms. Seidman repaid respondent for the cash bond.
According to the respondent, Ms. Seidman told him at some point before or after he bailed her out of jail that he did not have to pay her back. (The respondent's testimony varies as to whether at that time the balance on the promissory note was $14,132.00 or "somewhere in the ten to $12,000.00 range.")
After bailing Ms. Seidman out, on October 24th Michael Bordelon prepared and had her sign a lost note affidavit on November 20th.
I agree with the disciplinary board that respondent made false and irreconcilable statements to the Office of Disciplinary Counsel concerning this promissory note in violation of Rules 8.1(a), 8.4(a) and 8.4(c).
With so many explanations, and the disparity, respondent is not credible. In my mind, Ms. Seidman was victimized twice, first when she was solicited for a Twenty Thousand ($20,000.00) dollar loan from a lawyer who acquired knowledge of her personal injury settlement when she consulted with him, and who borrowed the money without advising her to retain independent counsel, and secondly, when he forced Ms. Seidman to sign the lost note affidavit dated November 20, 1994 which described the loan as "paid in full and completely discharged by the makers, and fully satisfied." The evidence shows that respondent intentionally prepared the lost note affidavit and intentionally misrepresented the debt as paid in full. Respondent knew, or should have known to advise Ms. Seidman to seek independent counsel before executing the lost note affidavit.
The disciplinary board found that respondent intentionally concealed the status of this promissory note throughout the disciplinary process.
I agree with the Board's recommendation that considering the severity of respondent's intentional misconduct, he should be suspended from the practice of law for three (3) years.
VICTORY, J., dissenting.
I would impose a greater sanction than that imposed by the majority.
NOTES
[1] See Seidman v. American Airlines, Inc., 923 F.2d 1134 (5th Cir.1991).
[2] The note was payable in monthly installments of interest only for a five-year term, with no prepayment penalty as to principal.
[3] Although the ODC requested copies of the checks reflecting his payments, and respondent evidenced an intent to comply with that request, he never did so.
[4] As the hearing committee properly concluded, the record does not support the allegation in the formal charges that respondent falsely denied his intimate relationship with Ms. Seidman. We note that the ODC appears to have abandoned this argument in its brief filed with this court.