952 So.2d 673 (2007)
In re Hersy JONES, Jr.
No. 2006-B-2702.
Supreme Court of Louisiana.
March 30, 2007.

*674 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Hersy Jones, Jr., an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent, consisting of a total of four counts of misconduct.[1] The two sets of formal charges were considered by separate hearing committees before being consolidated by order of the disciplinary board on January 31, 2006.

04-DB-064

The Burke Matter
In April 1997, Maxine Burke, acting as the curatrix on behalf of her mother, Mittie Fields, hired respondent to handled a dispute with her former accounting firm, Wilson and Bratlie, over billing invoices in connection with the operation of her mother's restaurant, Silver Moon Barbeque. She and respondent signed a written legal services agreement whereby she agreed to pay respondent a $1,000 fee in order for him to review and audit the invoices.[2] In addition, respondent would receive 25% of any reduction in the billing invoices and prior payments he was able to obtain. Ms. Burke paid the $1,000 fee the same day.
Soon thereafter, respondent contacted Wilson and Bratlie via letter. Wilson and Bratlie sent respondent some records at the end of April 1997. Respondent reviewed the records but never recovered any money on Ms. Burke's behalf. He *675 also never provided her with a report of his findings.
In September 1997, Ms. Burke discharged respondent.[3] In June 1998, she requested that he return her file. In September 1998, she requested that he refund the $1,000 fee because she claimed he did no work on the matter. Respondent failed to return her file and failed to refund any unearned fee.

The Wafer/Smith Matter
In October 1998, two sisters, Avery Wafer and Celester Smith, hired respondent to handle a property boundary dispute with their cousin. Respondent and his clients signed a retainer agreement that provided for an initial fee of $1,500, plus an additional $1,000 if litigation was necessary. Furthermore, the agreement indicated any additional work beyond the $2,500 amount would be billed at the rate of $125 per hour.
Respondent traveled with his clients to view the property, reviewed the documents they provided, and spoke with a surveyor. Thereafter, he determined litigation would be necessary to resolve the matter and requested the additional $1,000 to proceed. His clients declined to pay the additional $1,000, advising respondent they wanted to see the results of his work so far before paying him additional money. Rather than doing so, respondent informed his clients he was withdrawing from the representation and would refund any unearned fee.
Although he returned his clients' file to them, respondent did not refund any of the fee and did not provide his clients with an accounting. He also failed to adequately communicate with his clients during the representation.

Formal Charges
In the Burke matter, the ODC alleged that respondent violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (failure to refund an unearned fee), and 1.16 (failure to account for a fee and return a client's file) of the Rules of Professional Conduct. In the Wafer/Smith matter, the ODC alleged that respondent violated Rules 1.3, 1.4, 1.5, and 1.16 of the Rules of Professional Conduct.
Respondent answered the formal charges, essentially denying the allegations of misconduct. He also asserted two affirmative defenses-the defense of abandonment based on the ODC's untimely filing of formal charges[4] and the defense of abuse of right because the complaints were based on the bad faith motives of a disgruntled former employee.[5]

Hearing Committee Recommendation
The charges in 04-DB-064 proceeded to a hearing committee. After considering the evidence and testimony presented at *676 the hearing, the hearing committee filed its report.
In the Burke matter, the committee determined respondent acted diligently, and some or all of the fee was earned. However, it found respondent failed to communicate to Ms. Burke her rights as to a fee dispute and failed to return her file. The committee further noted respondent failed to advise Ms. Burke of her rights even after the ODC explained the rule to him.
In the Wafer/Smith matter, the committee agreed that some portion of respondent's fee was earned. In particular, it found respondent performed at least seven to nine hours of work (nine hours worked at $125 per hour would result in a $1,125 fee). It also determined there is no evidence that respondent lacked diligence. However, the committee found he failed to communicate by failing to return phone calls, failed to deposit into his trust account the portion of the fee that may have reasonably been in dispute, failed to communicate the right to arbitration of the fee dispute, and failed to account for the earned portion of the fee.
Based on these factual findings, the committee determined that respondent violated Rules 1.4, 1.5, and 1.16 of the Rules of Professional Conduct with respect to the Burke matter and Rules 1.4, 1.5, and 1.16(d) with respect to the Wafer/Smith matter.
The committee found that respondent initially acted negligently but his conduct eventually became knowing. As aggravating factors, it recognized a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law (admitted 1995),[6] and indifference to making restitution. In mitigation, the committee found absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings, and delay in disciplinary proceedings.
Under these circumstances, the committee recommended that respondent be suspended for two years, fully deferred, and be placed on probation, during which time he should complete five extra hours of continuing legal education in ethics and should submit the fee disputes to arbitration, if his victims so desire.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

05-DB-065

The Lensey Matter
In August 2001, Tisha Lensey, a former Shreveport police officer, hired respondent to represent her against the City of Shreveport. In particular, Ms. Lensey wanted respondent to file a wrongful termination action in state court and a civil rights action in federal court. Respondent and Ms. Lensey signed a contingency fee agreement with regard to the federal court action[7] and signed an hourly fee agreement with regard to the state court action.
The hourly fee agreement signed in connection with the state court action provided for a $2,000 advance deposit against future hourly billing at $150 per hour, with the client's approval required for expenses beyond the initial $2,000. Ms. Lensey paid respondent $750 towards the $2,000 deposit. Additionally, she performed clerical *677 work for respondent, who deducted $100 to $150 from her bi-weekly paychecks to be applied to the advance deposit. Respondent did not deposit any of the advance fees into his client trust account, nor did he account for or keep records of Ms. Lensey's payments. He also failed to keep track of the hours he worked on the state court matter.
The state court action resulted in Ms. Lensey's reinstatement as a police officer and receipt of back pay and interest totaling $73,602.48. Of this amount, $64,496.24 was paid directly to Ms. Lensey. The remaining $9,106.24 was paid in the form of check made payable to both respondent and Ms. Lensey.
At this point, a dispute arose between respondent and Ms. Lensey over whether respondent was entitled to a contingency fee in the state court action. As a result, Ms. Lensey refused to endorse the check. Respondent then endorsed Ms. Lensey's signature on the check and deposited the check into his operating accounting instead of his client trust account, despite the existence of the fee dispute. He also failed to account for or refund any of the funds to Ms. Lensey.[8]

Count IIThe Frazier Matter
In April 2001, Emmanuel Frazier was shot and killed by the police while allegedly fleeing arrest. A few days later, respondent approached Emmanuel's parents, David and Lucy Frazier, at a Shreveport funeral home where they were making funeral arrangements for their son and asked them to meet with him regarding their son's killing. The Fraziers did not know respondent, had no prior professional or personal relationship with him, nor had they previously contacted him seeking legal assistance. Nonetheless, they met with him and signed a general power of attorney, which allowed respondent to investigate Emmanuel's death.
Respondent also learned that Emmanuel was survived by an infant daughter. Upon learning the identity of the child's mother, Lakendra Williams, respondent signed her to a contingency fee agreement to represent her in a wrongful death claim.
In April 2002, respondent filed a lawsuit in federal court on behalf of Ms. Williams and the Fraziers based on a wrongful death claim. Because Emmanuel had a daughter, his parents did not have a viable wrongful death claim. In November 2002, the Fraziers' claims were dismissed.
In April 2004, the Fraziers filed a complaint against respondent with the ODC. They alleged that respondent failed to communicate with them and failed to return their file.

Formal Charges
In the Lensey matter, the ODC alleged that respondent violated Rules 1.5 (fee arrangements) and 1.15 (safekeeping property of clients or third parties) of the Rules of Professional Conduct. In the Frazier matter, the ODC alleged that respondent violated Rules 1.4, 3.1 (meritorious claims and contentions), 7.3(a) (solicitation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
*678 Respondent answered the formal charges, essentially denying the allegations of misconduct.

Hearing Committee Recommendation
The charges proceeded to a formal hearing. At the conclusion of the hearing, the hearing committee issued its report.
In the Lensey matter, the committee determined the evidence established that the state court matter was to be handled on an hourly basis and that the contingency fee agreement applied to the federal court matter only. The committee further found respondent attempted to assert a contingency fee over funds received in the state court matter even though he was not entitled to such a fee in that matter.
The committee found that the initial $750 payment made by Ms. Lensey was not earned at the time Ms. Lensey paid respondent and therefore should have been deposited by respondent into his client trust account. It found all other payments by Ms. Lensey may have been earned when paid. The committee also observed that given the amount of hours respondent worked on the case, he actually earned more than Ms. Lensey paid. However, it recognized he did not obtain written consent to work additional hours as required by the contract.
With regard to the $9,106.24 check made payable to respondent and Ms. Lensey, the committee found respondent acted improperly when he deposited the check into his operating account because he was aware Ms. Lensey disputed the fee. Additionally, the committee found respondent was not entitled to the entire amount based upon the terms of the contract with Ms. Lensey.
Based on these findings, the committee concluded respondent violated Rules 1.5 and 1.15 of the Rules of Professional Conduct.
In the Frazier matter, the committee accepted the testimony of Mr. and Mrs. Frazier, Emmanuel's sister, and her husband, all of whom testified that they did not know respondent prior to Emmanuel's death. Furthermore, the committee made a factual finding that found none of the family members had any contact with respondent prior to respondent's appearance at the funeral home. Thus, the committee concluded respondent solicited the representation of the Fraziers at Emmanuel's wake in violation of Rule 7.3.
In aggravation, the committee found a dishonest or selfish motive, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. The sole mitigating factor identified by the committee was respondent's lack of a prior disciplinary record.
Under these circumstances, the committee recommended that respondent be suspended for two years and attend the Louisiana State Bar Association's Ethics School.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation
Following the hearing committees' reports, the charges were consolidated for review by the disciplinary board. After reviewing the record, the disciplinary board determined that the hearing committees' factual findings were not manifestly erroneous.
Based on these facts, the board found that respondent violated Rules 1.4, 1.5, and 1.16 of the Rules of Professional Conduct in the Burke matter. It found he failed to keep Ms. Burke apprised of the status of his review of the billing records, failed to provide an accounting, and failed *679 to return her file at the termination of the representation. In the Wafer/Smith matter, the board found that respondent violated Rules 1.4, 1.5, and 1.16 by failing to return his clients' telephone calls, failing to place the disputed fee amount in his client trust account and seek a resolution of the dispute, and failing to account for funds at the termination of the representation. The board found that respondent violated Rules 1.5 and 1.15 in the Lensey matter when he failed to deposit the initial $750 fee payment into his client trust account, failed to deposit the $9,106.24 settlement check into his client trust account, converted the $9,106.24 to his own use, and failed to account for or refund any portion of the amount he converted. Finally, in the Frazier matter, the board found that respondent violated Rule 7.3 by soliciting the Fraziers during Emmanuel's funeral. The board further determined that respondent knowingly violated duties owed to his clients and to the legal profession.
Relying on the ABA's Standards for Imposing Lawyer Sanctions and jurisprudence from this court,[9] the board determined that the baseline sanction for respondent's misconduct is disbarment. In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. In mitigation, the board found an absence of a prior disciplinary record and full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings.
Considering these factors, the board found no reason to deviate from the baseline sanction of disbarment. Accordingly, the board recommended that respondent be disbarred, be required to make restitution to his victims, and be assessed all costs of these proceedings.
Neither respondent nor the ODC filed a timely objection to the disciplinary board's recommendation. However, respondent filed a motion to file an out-of-time objection. Although we denied this motion, we allowed respondent and the ODC to file briefs without oral argument. Both respondent and the ODC filed briefs.[10]

*680 DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our independent review of the record, we conclude the evidence produced by the ODC establishes in a clear and convincing matter that respondent failed to communicate with his clients, failed to deposit advance fees into his client trust account, failed to provide accountings, failed to refund unearned fees, failed to place disputed funds in his client trust account, failed to return a client's file upon termination of the representation, converted client funds to his own use, and solicited a representation. These facts establish violations of Rules 1.4, 1.5, 1.15, 1.16, and 7.3 of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Taken as a whole, respondent's conduct demonstrates a disregard for the welfare of his clients. Without diminishing the seriousness of his misconduct in the Burke and Wafer/Smith matters, we find respondent's most egregious actions occurred in the Lensey and Frazier matters.
In the Lensey matter, respondent knowingly and intentionally converted more than $9,000 of Ms. Lensey's funds by placing these funds into his operating account. Even accepting respondent's contention that there was some confusion as to whether the representation was on an hourly basis or contingent basis, the record establishes that respondent knew Ms. Lensey disputed the fee. Therefore, respondent had a clear duty to place the disputed funds in his trust account pursuant to Rule 1.5. His failure to do so amounts to a conversion of client funds.[11] When respondent's *681 conversion is combined with his other fraudulent acts, such as falsely endorsing Ms. Lensey's name to the check, the baseline sanction is disbarment. Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986).
Likewise, we consider respondent's actions in the Frazier matter to be serious in nature. The hearing committee made a finding of fact, which we determine is supported by the record, that respondent had no prior contact with the Frazier family prior to appearing at the funeral home. Thus, respondent's actions amount to solicitation. In In re Broome, 01-2260 (La.2/26/02), 815 So.2d 1, we explained that violation of the prohibition against solicitation is very serious professional infraction:
Our jurisprudence has consistently found solicitation to be a very serious professional violation. In re: D'Amico, 94-3005 (La.2/28/96), 688[668] So.2d 730 ("direct solicitation of professional employment from a prospective client in violation of Rule 7.3 is a very serious disciplinary violation that undermines the reputation of lawyers generally and the public's attitude toward the profession"); Louisiana State Bar Ass'n v. St. Romain, 560 So.2d 820 (La.1990) ("[s]olicitation is abhorrent to the legal profession and places lawyers in disrepute with the public"). Rules against solicitation are prophylactic measures which are intended to prevent harm before it occurs. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447[, 98 S.Ct. 1912, 56 L.Ed.2d 444] (1978).
Considering respondent's misconduct as a whole, we conclude the appropriate baseline sanction is disbarment. Numerous aggravating factors are present, namely a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. In mitigation, we find an absence of a prior disciplinary record and full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings.
Under these circumstances, we see no basis to deviate from the baseline sanction of disbarment. Accordingly, we will adopt the disciplinary board's recommendation and disbar respondent. We will further order that respondent shall provide accountings to his victims and make the appropriate restitution.[12]

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the briefs and the record, it is ordered that Hersy Jones, Jr., Louisiana Bar Roll number 23664, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. *682 Respondent is ordered to furnish complete accountings and full restitution of all unearned legal fees to his clients subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Originally, 04-DB-064 consisted of three counts of misconduct. However, the ODC withdrew Count II during the formal hearing in that matter. Accordingly, no further reference is made to Count II.
[2] The agreement indicated that respondent was acting as the attorney for Mittie Fields (Ms. Burke's mother) d/b/a Silver Moon Barbeque and Silver Moon Barbeque, Inc.
[3] Despite discharging respondent with respect to the auditing matter, Ms. Burke hired respondent to represent her in other matters.
[4] Respondent claimed the ODC completed its investigation in December 1999 but did not file formal charges until May 2004. In the interim, he heard nothing from the ODC. The ODC disputes this contention, stating that consent discipline was discussed, respondent rejected same, and he wished to proceed to a formal hearing.
[5] Respondent testified at the formal hearing that he employed Martha Alston, a disbarred attorney, as his assistant. See In re: Minnieweather, 94-1782 (La.12/9/94), 647 So.2d 1092, for the details of Ms. Alston's (a/k/a Martha Minnieweather) disbarment. After he fired her, a number of his clients, including Ms. Burke and Ms. Wafer, began filing complaints against him, which he believed were filed at Ms. Alston's urging.
[6] Although respondent was not admitted to the practice of law in Louisiana until 1995, he indicated he was admitted to the practice of law in New York in 1987.
[7] The federal court litigation proceeded to trial, but the jury found against Ms. Lensey. As a result, respondent recovered no fee in this matter.
[8] Ms. Lensey, through counsel, filed a petition for damages against respondent for the return of the $9,106.24. In response, respondent filed an answer and reconventional demand for 40% of the $73,602.48 in back pay and interest. Without notice to Ms. Lensey's attorney, respondent proceeded to take a default judgment against her in the amount of $20,338.49. The default judgment is dated September 26, 2005, which was more than two months after formal charges were filed against him in this matter. At the formal hearing, Ms. Lensey testified that neither she or her attorney were aware of respondent's reconventional demand, nor was she aware of the judgment against her.
[9] The board cites In re: Sledge, 03-1148 (La.10/21/03), 859 So.2d 671 (rehearing denied 12/12/03) (disbarment imposed upon an attorney who solicited clients, neglected his law practice, and failed to supervise his non-lawyer assistants); In re: Graugnard, 03-2899 (La.3/26/04), 869 So.2d 785 (disbarment imposed upon an attorney who converted and otherwise mishandled funds owed to clients and health-care providers, neglected client matters, failed to communicate with clients, failed to refund unearned fees, and lied under oath); and In re: Gines, 03-2827 (La.3/19/04), 869 So.2d 778 (disbarment imposed upon an attorney who neglected legal matters, failed to communicate with clients, failed to account for and refund unearned fees, failed to place disputed funds in trust, failed to safe keep client property, and failed to cooperate with the ODC).
[10] After filing his brief, respondent filed a "Motion to Supplement the Record," in which he sought to add three exhibits to the record: (1) a letter indicating respondent has entered into fee dispute resolution with the clients who are the subject of the Lensey matter, the Burke matter, and Wafer/Smith matter; (2) documentation that respondent has deposited $9,000 in disputed fees in the Lensey matter into his trust account; and (3) an affidavit from a member of the Frazier family discussing how respondent came into contact with the family. Respondent also filed a motion for leave to file a supplemental brief discussing these exhibits. The ODC did not object to admission of the first two exhibits, but objected to the third exhibit. By order dated March 21, 2007, we permitted respondent to file the first two exhibits, but denied the motion to file the third exhibit. Likewise, we permitted filing of the supplemental brief, but struck any reference to the third exhibit.
[11] Respondent places great emphasis on the fact that the committee did not find that he "stole" the money, only that he failed to place it in his trust account. However, for purposes of determining conversion for purposes of lawyer discipline, we do not need to find the lawyer had an intent to commit a theft of the funds. Rather, as we explained in Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986), the essence of conversion is whether the lawyer exercises dominion or control over the client's funds in a manner inconsistent with the client's rights:

The intent required for a conversion is not necessarily that of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights. A mistake of law or fact is no defense. Persons deal with the chattels or exercise acts of ownership over them at their peril, and must take the risk that there is no lawful justification for their acts. W. Prosser & W. Keeton, supra, § 15 at 92-93; Prosser, supra, at 171.
[12] Through his supplemental exhibits, which we have allowed into the record, respondent has provided the court with documentation that he has now deposited $9,000 into his trust account representing the disputed fee in the Lensey matter. Furthermore, respondent provided the court with documentation that he has submitted the Burke, Wafer/Smith, and Lensey matters to the Louisiana State Bar Association's fee arbitration program. While these actions, which occurred long after disciplinary proceedings were instituted, do not influence our decision with regard to the appropriate sanction, they are relevant for purposes of determining the amount of restitution owed by respondent to his clients.